# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES,<br>*Plaintiff,*<br><br>v.<br><br>LUQMAN GOTTI,<br>*Defendant.* | No. 3:18-cr-335 (VAB) |

## MEMORANDUM OF DECISION RE: THE SENTENCE

In 2000, Luqman Gotti ("Defendant"), then known as Timothy Pennington, at the age of eighteen, entered an Alford Plea to the sexual assault of a fourteen-year-old minor under Conn. Gen. Stat. § 53a-71(a)(1).

In 2017, Mr. Gotti knowingly contacted a minor through the Kik text message application and engaged in a sexually explicitly conversation with the minor. After the minor confirmed his age, Mr. Gotti both requested and sent graphic, sexual photographs.

On December 20, 2018, Mr. Gotti pled guilty to Accessing with Intent to View Child Pornography, 18 U.S.C. § 2252A(a)(5)(B).

The Court must now decide whether Mr. Gotti's previous state law conviction constitutes a predicate offense under 18 U.S.C. § 2252A(b)(2), requiring the imposition of a mandatory minimum term of imprisonment, and otherwise determine the appropriate sentence for him.

For the reasons discussed below, the Court determines that Mr. Gotti's previous state law conviction is not a predicate offense under 18 U.S.C. § 2252A(b)(2), and therefore does not require the imposition of a mandatory minimum term of imprisonment. The Court further determines that, after considering and weighing all of the relevant factors under 18 U.S.C. § 3553(a), including but not limited to determining the appropriateness of a departure from or

variance with the Sentence Guidelines, based on the parties' mutual understanding at the time of Mr. Gotti's plea agreement, a deduction of four points from his Sentencing Guidelines calculations to avoid an unwarranted sentencing disparity, a Non-Guidelines sentence with an upward variance to a term of imprisonment of **eighty (80) months** for Mr. Gotti's criminal conduct is necessary to ensure that there are no unwarranted disparities in his sentence.[1]

## I.   BACKGROUND

Arrested on April 25, 2018, Mr. Gotti appeared before a United States Magistrate Judge, the Honorable Robert A. Richardson, later that day. Judge Richardson ordered Mr. Gotti detained to ensure the safety of the community and because there was probable cause to believe that he committed an offense involving a minor.

On December 20, 2018, Mr. Gotti pled guilty to 18 U.S.C. § 225A(a)(5)(B), the elements of which include: (1) knowingly accessing with an intent to view material that contained an image of child pornography; (2) the child pornography had been transported through interstate commerce by any means including a computer, and (3) the defendant knew the material contained child pornography. Plea Agreement, ECF No. 28 (Dec. 20, 2018).

In the parties' plea agreement, there is an agreement that Mr. Gotti's base offense level under the United States Sentencing Guidelines ("U.S.S.G.") § 2G2.2(a)(2) is 18. *Id.* at 5. The parties also agree that, because Mr. Gotti did not intend to traffic in or distribute child pornography, the base offense level is decreased by two levels under U.S.S.G. § 2G2.2(b)(1). *Id.* The parties further agree that the base offense level is increased by four levels under U.S.S.G.

---

[1] This memorandum of decision only discusses in greater the reasoning behind the specific term of imprisonment imposed in Mr. Gotti's case. Other parts of his sentence, such as the terms of supervised release, were discussed at Mr. Gotti's sentencing hearing. ECF No. 85 (Sept. 18, 2020).

§ 2G2.2(b)(4) because the offense involved material that portrays sadistic or masochistic conduct, in that it depicts a young boy being anally penetrated by a foreign object. *Id.*

The parties stipulated to a two-level increase of the base offense level because the offense involved the use of a computer or an interactive computer service, the Kik smartphone application, under U.S.S.G. § 2G2.2(b)(6). *Id.* They also stipulated to a two-level increase to the base offense level under U.S.S.G. § 2G2.2(b)(7)(A), because the offense involved one image and one video resulting in the equivalent of at least 10 images. *Id.* Under U.S.S.G. § 2G2.2, comment n.6(b)(ii), each video shall be considered to have 75 images.

As agreed by the parties, Mr. Gotti's resulting adjusted offense level is 24. *Id.* Because the parties also agreed to a three-level reduction of the adjusted offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), Mr. Gotti's resulting total offense level is 21. *Id.* The parties calculated that Mr. Gotti falls within Criminal History Category V. *Id.* A total offense level of 21 with a Criminal History Category V results in a Sentencing Guideline range of 70 to 87 months, and a fine range of $15,000 to $150,000.

In the view of the United States Probation Office ("Probation"), however, a two-level reduction under U.S.S.G. §2G2.2(b)(1) should not have been included in the parties' calculations, because the base offense level is governed by U.S.S.G. §2G2.2(a)(1). Probation thus calculates a total offense level of 23, rather than 21, and that total offense level with a Criminal History Category V results in a Sentencing Guideline range of 84 to 105 months, and a fine range of $20,000 to $200,000. Pre-Sentence Investigation Report, ECF No. 47 at 9–10 (Aug. 23, 2019).

In any event, the Government argues that, because of Mr. Gotti's prior conviction, he faces a mandatory minimum term of imprisonment of 120 months. Government's Sentencing

Mem., ECF No. 53 at 1, 6–11 (Dec. 9, 2019). Mr. Gotti, in turn, argues that a mandatory minimum sentence does not apply here.[2] To the extent that the Court concludes that the ten-year mandatory minimum is not applicable, both parties agree that a departure under the Second Circuit's decision in *United States v. Fernandez*, 877 F.2d 1138 (2d Cir. 1989) is appropriate. *Id.* at 1145 ("[I]t is not startling that a district court presently may depart from a Guidelines sentence in order to give effect to a plea bargain if such a departure is warranted.").

The Court held a sentencing hearing on December 13, 2019 and continued that hearing until September 18, 2020, for a variety of reasons, including the challenges posed by an in-person sentencing during the coronavirus pandemic.

## II.   STANDARD OF REVIEW

18 U.S.C. § 2252A(a)(5) criminalizes the knowing possession with the intent to view child pornography. Violation of § 2252A(a)(5) typically carries no mandatory minimum sentence, unless the child pornography involves a prepubescent minor or a minor under the age of 12. Certain prior convictions, however, can trigger a ten-year mandatory minimum sentence. This includes a prior conviction "under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." 18 U.S.C. § 2252A(b)(2).

Two approaches are available to the Court to determine "whether a state offense qualifies as a predicate offense for a federal mandatory minimum sentence," *United States v. Barker*, 723

---

[2] In addition to the arguments addressed below the regarding the application of the categorical approach in determining whether a mandatory minimum sentence applies, Mr. Gotti also argues that, given the recent sentence of another defendant convicted of related acts, the application of a ten-year mandatory minimum sentence here would be unconstitutional. Def.'s Third Sentencing Mem., ECF No. 66 at 1–2 (Feb. 20, 2020). Because the Court determines that the ten-year mandatory minimum does not apply to Mr. Gotti's sentence as a matter of statutory construction, by applying relevant Supreme Court and Second Circuit precedent, the Court need not and does not reach this constitutional issue. *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." (citation omitted)).

F.3d 315, 319 (2d Cir. 2013) (citation omitted): a categorical approach or a modified categorical approach.

"Under a categorical approach, courts compare the statute forming the basis of the defendant's prior conviction with the applicable generic offense in the federal sentencing statute." *Id*. (citing *United States v. Beardsley*, 691 F.3d 252, 259 (2d Cir. 2012)). The generic crime constitutes "the offense as commonly understood" and becomes a predicate conviction "only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps v. United States*, 570 U.S. 254, 257 (2013). "The state conviction triggers removal only if, by definition, the underlying crime falls within a category of removable offenses defined by federal law." *Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 (2015).

Courts "presume that the state conviction 'rested upon … the least of th[e] acts' criminalized by the statute, and then [courts] determine whether that conduct would fall within the federal definition of the crime." *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1568 (2017) (first alteration in original) (quoting *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)). In ascertaining the minimum criminal conduct of a state statute, "there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (internal quotation marks and citation omitted).

The modified categorical approach allows courts to "consider facts underlying the prior conviction[] to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." *United States v. Moreno*, 821 F.3d 223, 227 (2d Cir. 2016) (citations and internal quotation marks omitted); *see also Beardsley*, 691 F.3d at 258 ("[T]he modified categorical approach is appropriate only where a statute is divisible into qualifying and non-

5

qualifying offenses, and not where the statute is merely worded so broadly to encompass *conduct* that might fall within the definition of the federal predicate offense . . . ." (emphasis in original)).

It requires a court to (1) "determine if the statute is divisible, such that some categories of proscribed conduct render an [enhancement appropriate] and some do not" and (2) "consult the record of conviction to ascertain the category of conduct of which the [defendant] was convicted." *Beardsley*, 691 F.3d at 258 (quoting *Lanferman v. Bd. of Immigration Appeals*, 576 F.3d 84, 88-89 (2d Cir. 2009)); *see also Hoodho v. Holder*, 558 F.3d 184, 189 (2d Cir. 2009) (finding the modified categorical approach applies "if a violation of a criminal statute can arise from 'diverse classes of criminal acts[,] some of which would categorically be grounds for removal and others which would not.'" (quoting *James v. Mukasey*, 522 F.3d 250, 254 (2d Cir. 2008))). How to determine a statute's divisibility remains an open question "when [a statute] encompasses both removable and non-removable offenses, but does not describe the removable offenses only in distinct subsections or elements of a disjunctive list." *Beardsley*, 691 F.3d at 264. In practice, the United States Court of Appeals for the Second Circuit ("Second Circuit") "has applied the modified categorical approach only to situations where the statute of prior conviction described qualifying and non-qualifying offenses in distinct subsections or elements of a list." *Id.*

## III.   DISCUSSION

### A.   The Applicable Approach:  Categorical or Modified Categorical

The Court first must decide whether the categorical or modified categorical approach applies to determining whether Mr. Gotti's prior state conviction under Conn. Gen. Stat. § 53-71(a)(1) qualifies as a predicate offense under 18 U.S.C. § 2252A(b)(2). *See United States v. Simard*, 731 F.3d 156, 160 (2d Cir. 2013) (the appropriate sentence under § 2252A(b)(2)

partially depends "on whether the defendant has previously been convicted of a [state] crime 'relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward.'" (quoting 18 U.S.C. § 2252A(b)(2)). Neither aggravated sexual abuse, nor abusive sexual conduct involving a minor or ward are defined within the statute.

For the reasons discussed below, the categorical approach applies.

To determine if a past conviction counts as a predicate offense, "courts apply what is known as the categorical approach: [t]hey focus solely on whether the elements of the crime of conviction sufficiently match the elements of" the generic federal crime. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). It requires application of the laws in place at the time of conviction. *Doe v. Sessions*, 886 F.3d 203 (2d Cir. 2018).

"Under a categorical approach, courts compare the statute forming the basis of the defendant's prior conviction with the applicable generic offense in the federal sentencing statute." *Barker*, 723 F.3d at 319 (citing *Beardsley*, 691 F.3d at 259). If a state statute "does not categorically fall within [the generic] definition," it will not constitute a triggering conviction. *Esquivel-Quintana*, 137 S. Ct. at 1568.[3]

Conn. Gen. Stat. § 53a-71(a)(1), at the time of conviction, provided:

> A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such persons . . . .

---

[3] For example, an *en banc* panel of the Eighth Circuit ruled that earlier juvenile adjudications do not constitute a prior conviction under § 2252A(b). *See United States v. Gauld*, 865 F.3d 1030, 1035 (8th Cir. 2017) ("Because federal law distinguishes between criminal convictions and juvenile-delinquency adjudications, and because §2252[A](b)(1) mentions only convictions, juvenile-delinquency adjudications do not trigger that statute's 15-year mandatory minimum.").

Conn. Gen. Stat. § 53a-71(a)(1) (1993), Conn. P.A. 93-340 (S.H. B. 6437) ("§ 53-71(a)(1)" or the "Connecticut statute").[4] 18 U.S.C. § 2252A(b)(1) provides:

> Whoever violates . . . subsection (a)(5) shall be fined under this title or imprisoned not more than 10 years, but if . . . such person has a conviction under this chapter, chapter 71, chapter 109A, or chapter 117. . . or, under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward . . . such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

18 U.S.C. §2252A(b)(1). There is no generic definition of "abusive sexual conduct involving a minor," however, "sexual abuse of a minor or ward" is defined in 18 U.S.C. § 2243. It criminalizes persons who

> [K]nowingly engage[ ] in a sexual act with another person who—
> (1) has attained the age of 12 years but has not attained the age of 16 years; and
> (2) is at least four years younger than the person so engaging g. . . .

18 U.S.C. § 2243(a).

The modified categorical approach is used when a statute is divisible, not merely broad. *Beardsley*, 691 F.3d at 258. The Connecticut statute here is not divisible. While successive subsections describe alternative means of creating liability for sexual assault in the second degree, those subsections have distinct elements which must be proven. There are no alternatives, conjunctives, or phrases to suggest there are potential ways to incur liability under the Connecticut statute. *See Mathis*, 136 S. Ct. at 2248 ("Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." (internal quotation marks omitted) (quoting Black's Law Dictionary 634 (10th ed. 2014)).

---

[4] Since Mr. Gotti's conviction of this state offense, Conn. Gen. Stat. § 53a-71(a)(1) has been amended and currently requires the actor to be "more than three years older than such other person." Conn. Gen. Stat. § 53a-71(a)(1) (2013).

As a result, the Court will apply the categorical approach, not the modified categorical approach. *See Descamps*, 570 U.S. at 256 (the categorical approach compares "the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime'").

### B.     The Application of the Categorical Approach

In applying the categorical approach, the Court presumes "that the state conviction 'rested upon…the least of th[e] acts' criminalized by the statute," *Esquivel-Quintana*, 137 S. Ct. at 1568 (alteration in original) (quoting *Johnson*, 559 U.S. at 137). Conn. Gen. Stat. § 53a-71(a)(1) criminalizes the engaging in of "sexual intercourse with another person" and the "other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such persons." The meaning of the phrase "sexual intercourse," defined in an earlier section of Connecticut law, as follows:

> Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body.

Conn. Gen. Stat. § 53a-65(2) (1993), Conn. P.A. 94-221 (S.S.B. 292).

The Government argues that Mr. Gotti's "prior felony conviction for second-degree sexual assault of a minor" triggers "a mandatory minimum term of imprisonment of 10 years and a term of supervised release of five years to life." Gov't Sentencing Mem., ECF No. 53 at 1 (Dec. 9, 2019). In the Government's view, "applying the categorical approach to 18 U.S.C. § 2252A(b)(2)" requires determining "whether a defendant was previously convicted of a state

offense '*relating to* aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward.'" *Id.* at 7 (emphasis in original).

In its view, the phrase "'relating to' has been 'broadly interpreted to apply not simply to state offenses that are equivalent to sexual abuse, but rather to any state offense that stands in some relation to, bears upon, or is associated with the generic offense.'" *Id.* (quoting *Barker*, 723 F.3d at 322-23). The Government further argues that Second Circuit precedent instructs that reference to the federal code is not needed to analyze whether a prior conviction should qualify as a triggering offense. *Id.* at 8 (citing *United States v. Allen*, 750 F.3d 209, 212-13 (2d Cir. 2014)). As a result, to the Government, similar to the state law at issue in *Barker*, "§ 53a-71 criminalizes sexual intercourse with a minor who cannot consent because of his/her age[,]" which then categorically qualifies as an offense "relating to . . . abusive sexual conduct involving a minor." *Id.* at 10-11 (alteration in original) (quoting 18 U.S.C. § 2252A(b)(2)).

Mr. Gotti argues that *Barker* is not controlling and emphasizes that the possible conviction of a fifteen-year-old under the statute is important to an analysis under the categorical approach. Def.'s Reply, ECF No. 54 (Dec. 11, 2019).[5] Mr. Gotti, along with the Federal Public Defender's Office ("FDO"), which filed an amicus curiae brief, ECF No. 42 (June 28, 2019) ("Amicus Br."), argues that the least of the acts criminalized under Connecticut's law was "consensual oral sex between a 15-year-old and a 13-year-old, or between a 16-year-old and a 14-year-old—where the offender reasonably believed the victim was older," Def.'s Reply. at 8.

---

[5] The sentencing memorandum submitted by Mr. Gotti focuses on the reasons a downward departure should be considered if the Court finds no mandatory minimum sentence is required. Def.'s Sent. Mem., ECF No. 51 (Dec. 12, 2019). It highlights the need for downward departure based on the plea agreement, the extraordinary neglect and physical and sexual abuse he suffered as a child, and his criminal history category. *Id.* at 4-7. Mr. Gotti also submitted a sentencing memorandum which presented, in less depth, the same arguments as the Federal Public Defender's Office ("FDO"). Def.'s Second Sent. Mem., ECF No. 43 (June 30, 2019).

In addition, in their view, Congress intended "abusive sexual conduct involving a minor" to have a uniform federal definition, that the terms found in 18 U.S.C. § 2252A(b)(2) are defined in relation to their federal counterparts,[6] that *Barker* misapplies the categorical approach, and that the rule of lenity applies. Amicus Br. With respect to the uniform federal definition argument, the FDO argues that the *Jerome* presumption, which states "that the application of federal legislation is nationwide. . . [and] the federal program would be impaired if state law were to control," *Jerome v. United States*, 318 U.S. 101, 104 (1943), necessitates national uniformity and the use of § 2243(a). Amicus Br. at 9-10 ("For '[i]f a conviction were to be determined by the application of the different … statutes of each state, then the application of federal criminal sanctions would depend solely upon where the defendant's previous conviction had occurred.'" (alteration in original) (quoting *United States v. Bergeman*, 592 F.2d 533, 537 (9th Cir. 1979)).

They further argue that the holding in *Esquivel-Quintana*, which found that the generic definition of "sexual abuse of a minor" requires the victim be younger than 16, "implicitly overrules, or at the very least 'casts doubt on,' the Second Circuit's precedents in this area." *Id*. at 11 (citation omitted). They also submit that the terms in § 2252A(b)(2) provide uniform federal definitions, then § 2243(a), defining sexual abuse of a minor, acts as an interpretive anchor and "guides application of the categorical approach . . ." *Id*. at 14 (citing *United States v. Townsend*, 897 F.3d 66, 68 (2d Cir. 2018)). That definition and the categorical approach demonstrate a three-year age difference between an offender and victim is a necessary element, which renders a mismatch between the state offense and generic federal definition. *Id*. Lastly, the

---

[6] The FDO's argument mirrors that in *United States v. Osborne*. 551 F.3d 718, 719 (7th Cir. 2009) ("Section 2252(b)(1) does not define [the term 'abusive'].... The phrase 'abusive sexual conduct involving a minor or ward' must be a subset of all 'sexual conduct involving a minor or ward.'").

FDO contends that "the rule of lenity should tip the scales in Mr. Gotti's favor because nothing establishes unambiguously that § 2252A(b)(2) encompasses his prior conviction." *Id.* at 30.

The Government responds to the FDO's amicus brief in its sur-reply. Sur-Reply, ECF No. 60 (Dec. 13, 2020). The Government notes that "the Second Circuit and other Courts of Appeal have explained that in enacting the enhanced penalty provision of § 2252A(b), Congress recognized the variation in state sexual misconduct laws that could lead to predicate convictions under § 2252A." *Id.* at 2; *see id.* at 3 ("More importantly, in *Lockhart* itself, the Supreme Court made clear that its 'construction of § 2252(b)(2)'s sexual-abuse predicates [did] not rely on a general assumption that Congress sought full parity between all of the federal and state predicates[.]'" (quoting *Lockhart v. United States*, 136 S. Ct. 958, 966 (2016))).

As to the FDO's arguments regarding *Barker*, including its inapplicability, undermining of *Esquivel-Quintana*, and failure to comply with *Beardsley*, the Government makes three arguments. First, *Barker* applied the categorical approach (required by *Beardsley*) and "[a]lthough the Second Circuit did not spell out the individual elements in its opinion, [it] 'conclude[d] that a conviction [of the state law offense] *qualifies categorically* as a [predicate] offense." *Id.* at 4 (emphasis in original) (third alteration in original). Second, *Barker*'s reasoning applies to "any statutory rape law." *Id.* at 5. Third, *Barker* "is controlling for its determination that a state statutory rape law need not mirror the federal statute in order to qualify as a prior conviction under 2252A(b)." *Id.*

As to the FDO's argument regarding the application of the generic definition, the Government finds *Garcia-Urbano v. Sessions*, 890 F.3d 726, 729-30 (8th Cir. 2018), persuasive, although the court there interpreted the Immigration and Nationality Act ("INA"). As the Government contends, the Eighth Circuit determined there "that if the generic offense has an age

differential of greater than two years in a day, statutory rape based solely on the age of the participants in at least twenty-seven States would not have constituted 'sexual abuse of a minor' under the INA." Sur-Reply at 7 (citing *Garcia-Urbano*, 890 F.3d at 730). The same analysis under the INA applies here. *Id.* at 7–8. Though the FDO argues that not all sex between teenagers is abusive, the Government contends that "as the *Barker* court and other courts have noted, any non-consensual sex with a minor relates to abusive sexual conduct involving a minor even if the relevant state statute lacks some significant age disparity or other aggravating factor identified elsewhere in federal law." *Id.* at 8 (internal quotation marks omitted) (quoting *Barker*, 723 F.3d at 324)).

Finally, the Government reiterates its previous argument that "the inquiry is not whether the state offense is inherently one of sexual abuse, but whether it inherently 'relates to' sexual abuse." *Id.* at 9.

Ultimately, the FDO argues that § 2243(a), defining federal sex crimes in Chapter 109A of Title 18, is one of the parallel federal crimes referred to in the clause preceding the list of state law predicates. Amicus Br. at 13. In its view, "§ 2243(a) serves as the 'interpretative anchor,' that guides application of the categorical approach to determine the meaning of 'abusive sexual conduct involving a minor.'" *Id.* at 14 (internal citation omitted) (citing *Townsend*, 897 F.3d at 68).

And the Government instead would apply the definition used by the *Barker* court, which defines "abusive sexual conduct involving a minor" "generically as 'misuse or maltreatment of a minor for a purpose associated with sexual gratification.'" Sur-Reply at 4 (quoting *Barker*, 723 F.3d at 324.) In its view, the FDO's contention that the Connecticut statute cannot serve as a predicate offense because it is possible that an offender (a fifteen-year-old) is below the age of

consent, speaks to whether or not the offender should be convicted in the first place, not whether the conviction counts as a qualifying offense. *Id.* at 8. It concludes that "the inquiry is not whether the state offense is itself inherently one of sexual abuse, but whether it inherently 'relates to' sexual abuse[,]" and "relating to" is broadly interpreted. *Id.* at 9.

The Court disagrees and finds that the application of the categorical approach here does not require the imposition of a mandatory minimum sentence under federal law. Even if there is not absolute clarity as to this result, the Court alternatively finds that the rule of lenity requires this result.

In reviewing the statute of conviction, the categorical approach "presume[s] that the state conviction rested upon . . . the least of th[e] acts criminalized by the statute and then [looks to] [] whether that conduct would fall within the federal definition of the crime." *Esquivel-Quintana*, 137 S. Ct. at 1568 (citation and internal quotation marks omitted) (second alteration in original). As a result, in *Esquivel-Quintana*, a previous state conviction counted "only if the least of the acts criminalized by the state statute falls within the generic federal definition of sexual abuse of a minor." *Id.*

Significantly, the Second Circuit recently reaffirmed this application of the categorical approach and noted "that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *United States v. Thompson*, 961 F.3d 545, 550 (2d Cir. 2020).

Thus, "in the context of statutory rape offenses that criminalize sexual intercourse based solely on the age of the participants, the generic federal definition of sexual abuse of a minor requires that the victim be younger than 16." *Esquivel-Quintana*, 137 S. Ct. at 1568 (internal quotation marks omitted). And "[b]ecause the California statute at issue in this case does not

14

categorically fall within that definition, a conviction pursuant to it is not an aggravated felony under § 1101(a)(43)(A)." *Id.*

Applying the categorical approach, as the U.S. Supreme Court did in *Esquivel-Quintana* and as the Second Circuit recently did in *Thompson*, results in Mr. Gotti's previous state conviction not constituting a prior offense under Section 2252A(b).

This Court, as it must, begins its analysis with the text of the relevant statutes. *See Esquivel-Quintana*, 137 S. Ct. at 1568 ("We begin, as always, with the text."); *see also United States v. Vado*, No. 14-cr-666 (PAE), 2015 WL 1611337, at *6 (S.D.N.Y. Apr. 10, 2015) ("Absent a statutory definition, the Court uses familiar canons of statutory interpretation to construe these terms.").

### 1.  § 2243(a)

As discussed above, 18 U.S.C. § 2252A(b)(1) provides:

> Whoever violates. . . subsection (a)(5) shall be fined under this title or imprisoned not more than 10 years, but if. . . such person has a conviction under this chapter, chapter 71, chapter 109A, or chapter 117. . . or, under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward. . . such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

18 U.S.C. §2252A(b)(1).

There is no generic definition of "abusive sexual conduct involving a minor", however "sexual abuse of a minor or ward" is defined in 18 U.S.C. § 2243. 18 U.S.C. § 2243 which makes it a crime to:

> [K]nowingly engage[ ] in a sexual act with another person who—
> (1) has attained the age of 12 years but has not attained the age of 16 years; and
> (2) is at least four years younger than the person so engaging . . . .

18 U.S.C. § 2243(a). Congress divided 2243(a) into subsections, (1) and (2), joined with the conjunctive "and." Thus, the elements of both subsections must be proven beyond a reasonable doubt to sustain a federal conviction.

"Sexual abuse of a minor," which relates to sexual misconduct of a minor, is "defined generically as 'misuse or maltreatment of a minor for a purpose associated with sexual gratification." *Barker*, 723 F.3d at 324 (quoting *United States v. Sonnenberg*, 556 F.3d 667, 671 (8th Cir. 2009)). A conviction may trigger the sentencing enhancement if the state law relates to sexual abuse of a minor; "a law that proscribes non-consensual sexual acts with a minor victim addresses, by its nature, 'abusive sexual conduct involving a minor,' defined ordinarily as 'misuse or maltreatment of a minor for a purpose associated with sexual gratification[.]'" *Id.* (quoting *Sonnenberg*, 556 F.3d at 671).

Unlike other statutes with applicable predicate offenses, however, where the statute at issue listed specific predicate convictions, § 2252A(b)(2) uses the phrase "relating to."[7] This language provides "for an enhanced sentence not merely where the state offense qualifies an offense enumerated in the federal penalty provision (*e.g.*, where the prior offense was for sexual abuse), but also when the state offense is one '*relating to*' this offense (*e.g.*, where the prior offense 'relat[ed] to' sexual abuse)." *Vado*, 2015 WL 1611337, at *4 (alterations and emphasis in original); *compare* 18 U.S.C. § 2252A(b)(2) *with* 18 U.S.C. § 924(e)(2)(B).

In *Barker*, the phrase "relating to" encompassed not only state offenses equivalent to sexual abuse, but also "'any state offense that stands in some relation [to], bears upon, or is

---

[7] In analyzing federal drug offenses, the Second Circuit recently found the use of the phrase "conduct relating to" to modify only the list of controlled substances and did "not link other non-controlled substances or compounds to the forgoing enumerated classes of drugs." *Thompson*, 961 F.3d at 553; *see also* 21 U.S.C. § 802(44) ("The term 'felony drug offense' means an offense that is punishable by imprisonment for more than one year under any law of the United States . . . that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.").

associated with [the] generic offense." *Barker*, 723 F.3d at 323 (quoting *United States v. Strickland*, 601 F.3d 963, 967 (9th Cir. 2010)) (alterations in original). It specifically contrasted the language in § 2252A(b) with that of the recidivism provision of 18 U.S.C. § 2247(b). That statute triggers a mandatory minimum when a state law offense "consisting of conduct *that would have been an offense* under chapter [117], chapter 109A, chapter 110, or section 1591 if such offense had been committed in federal territorial jurisdiction." *Id.* (emphasis and alteration in original) (internal quotation marks omitted). In *Barker*, the decision by Congress, to employ "relating to" rather than to specify parallel federal crimes, intentionally "defined only in general terms, recognizing the diversity among the several states in the *specific elements* of sexual misconduct laws." *Id.* (emphasis in original).

But as the Supreme Court clarified in *Esquivel-Quintana*, if a state statute "does not categorically fall within [the generic] definition," it will not constitute a triggering conviction. 137 S. Ct. at 1568. Moreover, it "turns the categorical approach on its head by defining the generic federal offense of sexual abuse of a minor as whatever is illegal under the particular law of the State where the defendant was convicted." *Id.* at 1570. If that were the case, "there is no 'generic' definition at all." *Id.*  The Supreme Court recognized that "18 U.S.C. § 2243 . . . provides further evidence that the generic federal definition of sexual abuse of a minor incorporates an age of consent of 16, at least in the context of statutory rape offenses predicated solely on the age of the participants." *Id.*

While the Supreme Court left "for another day whether the generic offense requires a particular age differential between the victim and the perpetrator, and whether the generic offense encompasses sexual intercourse involving victims over the age of 16 that is abusive because of the nature of the relationship between the participants," *id.* at 1572, the Supreme

Court held that "the generic federal definition of 'sexual abuse of a minor' under §
1101(a)(43)(A) requires the age of the victim to be less than 16." *Id.* at 1572-73.

When compared to the federal statute, the underlying elements of the relevant
Connecticut statute do not match: the federal statute requires a four-year age differential,
Connecticut's law a two-year age differential; the federal law requires a victim to attain the age
of twelve, Connecticut's law the age of thirteen. The categorical approach requires the state
elements to be "the same as, or narrower than, those of the generic offense." *Descamps*, 570 U.S.
at 257. Connecticut's statute, however, is broader than the federal statute and makes it a crime to
engage in conduct, not prohibited by federal law: sexual intercourse between a victim at least
thirteen years of age, and a person less than four years older than the victim, although more than
two years older, even if this sexual contact was consensual. *See State v. Jason B.*, 248 Conn. 543,
554 (1999) (recognizing that the Connecticut law criminalized conduct even if the victim
"engage[d] in physically consensual intercourse."); *cf. U.S. v. Escalante*, 933 F.3d 395, 402
(5thCir. 2019) ("Looking solely at the elements then, the Utah offense criminalizes consensual
sexual contact between an 18-year-old and a 15-year-old, whereas the federal statute does not.").

Indeed, applying the categorical approach, the Second Circuit recently vacated a sentence
and remanded it for resentencing where the state law conviction could not constitute a predicate
felony offense because the state statute "criminalized conduct beyond the scope of the federal
analog." *Thompson*, 961 F.3d at 547; *see also Escalante*, 933 F.3d at 402 ("Thus, under the
categorical approach, the Utah offense 'sweeps more broadly" than the comparable federal
offense and cannot serve as a proper predicate for a [Sexual Offense Registration and
Notification Act of 2006] tier II sex offender designation.").

Accordingly, because the "least of the acts" criminalized by Connecticut's statute extends beyond the reach of the federal definition of the crime, Mr. Gotti's previous Connecticut conviction does not trigger the mandatory minimum under federal law. *See Townsend*, 897 F.3d at 73 ("[A] state statute that punishes conduct not criminalized by federal law cannot affect the Guidelines calculation.").[8]

### 2. Rule of Lenity

Alternatively, the rule of lenity resolves ambiguities "in favor of the defendant only 'at the end of the process of construing what Congress has expressed' when the ordinary canons of statutory construction have revealed no satisfactory construction." *Lockhart*, 136 S. Ct. at 968 (quoting *Callanan v. United States*, 364 U.S. 587, 596 (1961)). It instructs that "ambiguities about the breadth of a criminal statute should be resolved in the defendant's favor." *United States v. Davis*, 139 S. Ct. 2319, 2333 (2019). "And much like the vagueness doctrine, it is founded on 'the tenderness of the law for the rights of individuals' to fair notice of the law 'and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.'" *Id.* (citing *United States v. Wiltberger*, 17 U.S. 76, 95 (1820)). It is invoked "only

---

[8] In reaching this conclusion, the Court acknowledges that some recent precedents outside of the Second Circuit, after the Supreme Court's decision in *Esquivel-Quintana*, have reached a different conclusion. *See e.g.*, *U.S. v. Kraemer*, 933 F.3d 675, 684-85 (7th Cir. 2019) ("[R]equiring an exact match between a state's definition of sexual abuse of a child and one of the federal offenses would thwart needlessly Congress's purpose of protecting young children from sexual predators by imposing heightened sentences for repeat offenders."). But this Court is obligated to apply Supreme Court and Second Circuit precedents faithfully. And some of these decisions issued after *Esquivel-Quintana*, such as the Seventh Circuit's decision in *Kraemer*, do not address or even refer to the Supreme Court's express guidance that courts "turn[] the categorical approach on its head by defining the generic federal offense of sexual abuse of a minor as whatever is illegal under the particular law of the State where the defendant is convicted." *Esquivel-Quintana*, 137 S. Ct. at 1570; *see also Townsend*, 897 F.3d at 74 ("[B]ecause the state statute of conviction criminalizes the sale of a substance not criminalized under federal law, the state statute does not categorically match the federal crime."). And other decisions, such as the Third Circuit's recent decision in *U.S. v. Portanova*, 961 F.3d 252 (2020), acknowledge the test's proper application, to "line up the elements of the state crime of conviction with the federal generic offense, that is, the offense as commonly understood, and determine if they match," *id.* at 255-56 (internal quotations and footnotes omitted), but nevertheless adopt a "looser categorical approach," where the broad language of "relating to" in the federal statute eliminates the need for "complete congruence between federal and state predicates." *Id.* at 260. In contrast to the Supreme Court's guidance in *Esquivel-Quintana*, under either of these versions of the categorical approach, "there is no 'generic' definition at all." *Esquivel-Quintana*, 137 S. Ct. at 1570.

when, after consulting traditional canons of statutory construction, [the court is] left with an ambiguous statute." *United States v. Hayes*, 555 U.S. 415, 429 (2009) (quoting *United States v. Shabani*, 513 U.S. 10, 17 (1994)). "To invoke the rule, [the court] must conclude that there is a grievous ambiguity or uncertainty in the statute." *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (internal quotation marks omitted).

When faced with such an ambiguity, the Court must apply the construction favorable to the defendant. Precedent is inconclusive with respect to this statute. In *Beardsley*, the court dealt with an underlying state offense of endangering the welfare of a child. 691 F.3d at 274 ("Thus, New York's definition of endangering the welfare of a child is not merely an overinclusive state statute that defines some crimes that are analogous to the generic federal crimes listed in 18 U.S.C. § 2252A(b)(1). . . . It is a categorically distinct law.") In *Allen*, the Second Circuit examined a New York second degree sexual abuse conviction which protected victims under the age of 14, finding the state statutory definition of "sexual contact" fell within the ordinary meaning of the term "sexual abuse of a minor." 750 F.3d at 212. In *Chery v. Ashcroft*, the Second Circuit found that an offense under § 53a-71, without specifying which subsection the defendant had previously been convicted of, constituted a crime of violence under the INA because "although a conviction may be obtained under § 53a-71 for consensual sexual intercourse and force may not be present in all circumstances, the *risk* of the use of force is inherent in each of the offenses set forth in the statute." 347 F.3d 404, 408 (2d Cir. 2003) (emphasis in original).

Of these decisions, the decision in *Barker* is the closest. The defendant there was subjected to a mandatory minimum sentence because of a prior state offense, the statute of which was a statutory rape law that criminalized an unlawful sexual act with a minor under the age of

16. *Barker,* 723 F.3d at 318. Like Mr. Gotti has, the defendant there focused on the lack of significant age difference. *Id.* The court in *Barker* applied the categorical approach, not to a parallel crime in chapter 109A, but to the definition used in *Beardsley*, mainly because of the use of "relating to" in § 2252A(b)(2). *Id.* at 322-23.

While the statute, not prior interpretations, dictates whether the rule of lenity applies, precedent illustrates why the rule of lenity must apply here. It is not clear that the Connecticut statute categorically relates to sexual abuse or abusive sexual conduct involving a minor. The Connecticut statute prohibits sexual intercourse and describes an age differential broader than that of a similar federal parallel offense. In contrast, the statutory rape law in *Barker* specified that the sexual act between the offender and victim was unlawful, necessarily incorporating some degree of illegality, consent, abuse, or impropriety. *Id.*

Here, the state statute includes all sexual intercourse between those within the applicable age range and does not distinguish between consenting actors. Indeed, as the Connecticut Supreme Court noted: "The general purpose of § 53a-71(a)(1) is to protect victims who are thirteen, fourteen, or fifteen years of age, and thus may not have the full measure of maturity to make an intelligent choice regarding sexual intercourse, from being taken advantage of by someone who, because he or she is significantly older, may be able to persuade the victim to engage in physically consensual sexual intercourse." *Jason B.*, 248 Conn. at 553-54. And *Barker*'s holding "that a law that proscribes non-consensual sexual acts with a minor victim addresses, by its nature, 'abusive sexual conduct involving a minor'" is a more narrow interpretation than either the Government or the FDO suggests. 723 F.3d at 324.

The inquiry in *Lockhart*, in which the Supreme Court found the rule of lenity did not apply, also is distinguishable. There, the construction of the sentence and the modifying phrase

did not necessitate the rule of lenity. *Lockhart*, 136 S. Ct. at 968 ("But the arguable availability of multiple, divergent principles of statutory construction cannot automatically trigger the rule of lenity . . . the rule of the last antecedent is well supported by context and Lockhart's alternative is not."). Here, the ambiguity stems from the intent of Connecticut's General Assembly to protect minors from even "physically consensual sexual intercourse," *Jason B.*, 248 Conn. at 554, with slightly older minors, and the degree to which this conduct is broader or narrower than conduct prohibited by federal law.

And to the extent that there is a question as to whether the Second Circuit's decision in *Barker* controls, or whether the subsequent application of the categorial approach by the Supreme Court in *Esquivel-Quintana* and the Second Circuit in *Thompson* should govern, then the rule of lenity must apply because "'the statute's ambiguity makes it impossible' to interpret the provision at issue 'without simply guessing about [C]ongressional intent." *Vado*, 2015 WL 1611337, at *15 (quoting *United States v. Dauray*, 215 F.3d 257, 264-65 (2d Cir. 2000)).

Accordingly, even if it is not clear that the "least of the acts" criminalized by Connecticut's statute extends beyond the reach of the federal definition of the crime, there is sufficient ambiguity about the scope of the Connecticut statute's reach to apply the rule of lenity, and not require the imposition of a mandatory minimum sentence here.

### C.     Section 3553(a) Factors

In sentencing, a court is required to consider all relevant factors under 18 U.S.C. § 3553(a) and to issue "a sentence sufficient, but not greater than necessary." 18 U.S.C. § 3553(a); *see also United States v. Romano*, 794 F.3d 317, 339 (2d Cir. 2015) (recognizing the relevance of the § 3553(a) factors in considering the length of a sentence). Under paragraph (2) of this subsection, the sentence must "reflect the seriousness of the offense, to promote respect

for the law, and to provide just punishment for the offense," as well as "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D). The statute additionally requires consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant," "the kinds of sentences available," the relevant "sentencing range established" for the offense, and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3), (4), and (6).

A "district court need not impose a Guidelines sentence, and may, if doing so would be reasonable, lower the sentence below the Guidelines range even when a downward departure is unavailable." *United States v. Brady*, 417 F.3d 326, 333 (2d Cir. 2005). "[I]f a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher." *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006). Just as importantly, after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory. *See id.* at 245 ("[T]he federal sentencing statute, as amended, makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well." (citations omitted)).

### 1. The Applicable Sentencing Guideline Range

While the parties agreed in the plea agreement that the applicable Sentencing Guideline range was 70 to 87 months, Plea Agreement, ECF No. 28 at 5 (Dec. 12, 2018), Probation's subsequent calculations placed that range at 84 to 105 months, and the Government agrees.

Nevertheless, the Government also agrees that if the Court determined that a ten-year mandatory minimum sentence did not apply to Mr. Gotti, the Court should issue a departure consistent with *Fernandez* and adopt the Sentence Guideline range agreed to at the time of the plea agreement.

The Court agrees, and will give effect to the understanding adopted by the parties at the time of the plea agreement, and issue a Non-Guidelines sentence, consistent with *Fernandez*, 877 F.2d at 1145 ("[A] district court presently may depart from a Guidelines sentence in order to give effect to a plea bargain if such a departure is warranted."), and for other reasons, discussed further below, issue an upward variance.

### 2. The Weighing of the Various Section 3553(a) Factors

This Court must weigh a variety of factors under 18 U.S.C. § 3553(a) and starts with the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The criminal conduct here is not just serious, but troubling. Mr. Gotti reached out to a minor, engaged in sexually explicit conversations with that minor, and convinced that minor to send sexually explicit images of himself, including a video depicting sadistic and masochistic conduct. Plea Agreement at 5. Equally troubling is the abusive and traumatic childhood experienced by Mr. Gotti. Indeed, as a recent mental health examination revealed, Mr. Gotti's "[p]roblems with managing impulses particularly related to sexual behavior are common with his condition and are the direct result of the extraordinary sexual trauma he endured beginning in very early childhood." Pre-Sentence Report Suppl., ECF No. 52-2 at 4 (Dec. 5, 2019) ("Psychiatry Report").

The Court also must impose a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct," *id.* (a)(2)(B), "to protect

the public from further crimes of the defendant," *id.* (a)(2)(C), and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *id.* (a)(2)(D).

Here, even though Mr. Gotti has experienced "extreme childhood sexual abuse and extensive interpersonal trauma," Psychiatry Report at 4, "he has never received the length or quality in treatment needed to begin to address his condition," *id.* at 5. And based on his recent psychological evaluation, there is reason to believe that "[w]ith appropriate treatment his condition is likely to improve and, as a result, his risk for recidivism will be significantly reduced." *Id.* As a result, on this record, "adequate deterrence," "protection of the public from future crimes," and "effective" correctional treatment is contingent on Mr. Gotti receiving significant and long overdue mental health treatment.

Because of the seriousness of his crimes, and the absence of meaningful treatment for Mr. Gotti thus far, absent the unavailability of viable mental health services in the appropriate Bureau of Prisons facility – and there is no basis for such a conclusion on this record – Mr. Gotti's need for mental health treatment does not warrant relieving him of or otherwise significantly reducing his criminal sentence.

This Court further must consider "the kinds of sentences available" generally, 18 U.S.C. § 3553(a)(3), the "kinds of sentences" informed by the Sentencing Guidelines, *id.* (a)(4) and (a)(5), and "the need to avoid unwarranted sentences disparities among defendants with similar records who have been found guilty of similar conduct." *id.* (a)(6). Significantly, a defendant who had engaged in similar conduct but who had a lower Criminal History Category received a 60-month sentence. *See generally* Def.'s Third Sentencing Mem. (comparing Mr. Gotti's case to *United States v. Gregan*, 3:19-cr-253 (JCH)).

Mr. Gregan's sentence is the result, in part, of a deduction of four points under U.S.S.G. § 2G2.2(b)(4) because the offense involved material that portrays sadistic or masochistic conduct in that it depicts a young boy being anally penetrated by a foreign object, because in that case, U.S. District Judge Janet C. Hall determined that this deduction was not warranted following the viewing of the relevant videotape. *Id.* Because the failure to deduct the same four points here would result in an "an unwarranted sentence[ ] disparit[y] among defendants with similar records who have been found guilty of similar conduct," the Court also must deduct four points from the calculation of Mr. Gotti's Sentencing Guideline range. After taking into consideration the Sentencing Guideline Range agreed to by the parties at the time of the plea agreement, a Sentencing Guidelines range of 70 to 87 months and a total offense level of 21, a further deduction of four points would result in a total offense level of 17, and a Sentencing Guidelines range for Mr. Gotti of 46-57 months.

But applying this Sentencing Guidelines range would result in a lower sentence for Mr. Gotti than Mr. Gregan, despite Mr. Gotti's significantly more extensive criminal history. Mr. Gregan is in Criminal History Category I, while Mr. Gotti is in Criminal History Category V. As a result, the Court will not impose a sentence within this revised Sentencing Guidelines range. Instead, in order to avoid an unwarranted sentence disparity, the Court's Non-Guidelines sentence will vary upward, and take into consideration the need for a sentence that distinguishes between these two defendants.

Finally, the Court must consider "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Here, however, while restitution ordinarily is appropriate in sentences involving the sexual victimization of minors, *United States v. Pearson*, 570 F.3d 480, 486 (2d Cir. 2009) ("Section 2259(b) provides for mandatory restitution of 'the full amount of

the victim's losses,' which includes 'any costs incurred by the victim' for 'medical services relating to physical, psychiatric, or psychological care.'" (quoting 18 U.S.C. § 2259)); *see also United States v. Aumais*, 656 F.3d 147, 155 (2d Cir. 2011) (noting restitution is not "categorically foreclose[d] . . . to victims of child pornography from a defendant who possesses their pornographic images"), the Government has yet to seek restitution. As a result, the Court will not consider restitution at this time. *See* 18 U.S.C. § 3664 ("If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, . . . the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.")

### 3.  The Appropriateness of Further Departures or Variances

The Court now will consider whether a further downward departure from the agreed upon guideline range stipulation is warranted. *See United States v. Mumuni Saleh*, 946 F.3d 97, 106 (2d Cir. 2019) ("[A] district court's evaluation of the evidence is 'clearly erroneous' when [the appellate court] [is] left with the 'definite and firm conviction' that the district court has misinterpreted the record and, as a result, has misweighed certain aggravating or mitigating factors."); *United States v. Flaquer*, 361 F. App'x 222, 224 (2d Cir. 2010) (holding that a within-guideline sentence where "the record shows that the District Court considered a properly calculated advisory guidelines range, properly considered the factors listed in 18 U.S.C. § 3553(a), and stated its reasons for assigning the sentence" was not an abuse of discretion).

### a.    The Characteristics of the Defendant

"Section 5K2.0 of the Sentencing Guidelines provides the sentencing court with discretion to depart from the applicable Guidelines range if 'there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different

from that described.'" *United States v. Rivera*, 192 F.3d 81, 83-84 (2d Cir. 1999) (quoting U.S.S.G. § 5K2.0). "[M]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, except as provided in Chapter Five, Part K, Subpart 2 (Other Grounds for Departure)." *Id.* at 84 (quoting U.S.S.G. § 5H1.3). "[A]buse suffered during childhood—at some level of severity—can impair a person's mental and emotional conditions." *Id.* at 85 (citing *United States v. Roe*, 976 F.2d 1216, 1218 (9th Cir. 1992)).

Section 5H1.3 permits a sentencing departure if "[m]ental and emotional conditions . . . individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3. While the Sentencing Guidelines "expressly disfavor[ ] departures based upon mental and emotional conditions. . . [the Second Circuit] has held . . . that there are indeed certain situations where a person's mental and emotional conditions may be taken into account in granting a downward departure." *Brady*, 417 F.3d at 333 (citing *Rivera*, 192 F.3d at 85).

By any measure, Mr. Gotti's case is not "unusual" and not "typical." From a very young age, Mr. Gotti has been exposed to and experienced severe trauma. There has been intervention by Department of Children and Families Services ("DCF") in Mr. Gotti's upbringing since the age of two years old, which continued throughout his childhood. Def.'s Sent. Mem. at 2. Mr. Gotti also has been a ward of the state of Connecticut and has been admitted "in and out of children's psychiatric hospitals with other disturbed young kids." *Id.* When only six-and-a-half years old, DCF admitted Mr. Gotti "on an emergency basis as 'severely sexually and physically abused.'" *Id.* A letter from the DCF regional Director described Mr. Gotti "as 'one of the most damaged children at the [ ] Center.'" *Id.* at 2-3. Three months after entering that facility, the

Center determined that "Mr. Gotti needed 6-8 years [of] additional residential treatment and foster care." *Id.* at 3. The State had paid for his stay at the Center, but determined that it could no longer afford the expense. *Id.* The State then returned Mr. Gotti to his mother at the age of 10. *Id.*

As discussed above, given his extensive childhood abuse, persistent substance abuse as well as related addiction issues, Pre-Sentence Report ¶ 70, and limited therapeutic opportunities, a downward departure or variance, however, would only be appropriate to the extent Mr. Gotti could not receive the necessary mental health treatment in a facility under the control of the Bureau of Prisons. On this record, there is no support for this type of departure or variance here.

### b. Criminal History Category

Downward departures also are permitted under U.S.S.G. § 4A1.3(b); "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."

Mr. Gotti seeks a downward departure to a Criminal History Category IV because of points given related to his failure to register as a sex offender. Def.'s Sent. Mem. at 5-6. The first time, Mr. Gotti entered a guilty plea and received a fine, instead "of being given the opportunity to register." *Id.* at 5. He failed to register again while still in the custody of the Connecticut Department of Corrections, and again "entered a guilty plea and was given an 18 month prison sentence," instead of being given an opportunity to register." *Id.* at 6. He also received a fine for larceny in the sixth degree in 2012. *Id.* Mr. Gotti believes the additional five points for these offenses "overstate the seriousness of Mr. Gotti's criminal history and that a downward departure is warranted." *Id.*

29

The Government disagrees. After release from prison following the May 2000 sexual assault conviction, Mr. Gotti violated probation on three occasions and served additional jail time, one violation "resulted in another 4-year jail sentence." United States's Sentencing Memorandum, ECF No. 53, at 24 (Dec. 9, 2019) ("Gov't. Sent. Mem."). "While in custody, he received nine disciplinary citations for theft, disobeying orders, insulting language or behavior, flagrant disobedience, and threats." *Id.* In 2008, he received a conviction for resisting arrest and third-degree assault, and for failing to register as a sex offender. *Id.* at 25. In 2009, Mr. Gotti again received a conviction for failing to register as a sex offender. *Id.* In 2012, he received a convicted for sixth-degree larceny. *Id.* In 2015, Mr. Gotti also received a conviction for two counts of second-degree threatening. *Id.*

U.S.S.G. § 4A1.3(b)(2)(B) prohibits downward departures for "(i) an armed career criminal within the meaning of § 4B1.4 (Armed Career Criminal); and (ii) a repeat and dangerous sex offender against minors within the meaning of § 4B1.5 (Repeat and Dangerous Sex Offender Against Minors)." The defendant must have "committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction[.]" U.S.S.G. § 4B1.5(a). A "'sex offense conviction' (I) means any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B), if the offense was perpetrated against a minor." U.S.S.G. § 4B1.5(a), comment 3(A)(ii).

While Mr. Gotti's previous state conviction does not result in the imposition of a ten-year mandatory minimum, for the reasons stated above, this previous state offense does prevent a downward departure of his Criminal History Category.

Having considered and weighed all of the relevant factors under 18 U.S.C. § 3553(a), and any all bases for a departure or variance, ultimately, there must be a Non-Guidelines sentence and an upward variance from the 57 to 71 months range under the Sentencing Guidelines. The

seriousness of Mr. Gotti's underlying criminal conduct and the need for protection of the public warrant a sentence significantly above Mr. Gregan's sentence of 60 months. But the absence of sustained mental health treatment for Mr. Gotti directed at addressing the root causes of his underlying criminal conduct thus far – treatment, which on this record, "is likely to improve" his condition and "significantly reduce[ ]" Mr. Gotti's "risk for recidivism" – suggests that, while there must be some significant distinction between the two sentences, any such difference should be measured, in order to be "sufficient, but not greater than necessary" under 18 U.S.C. § 3553(a).

Accordingly, the Court imposes a term of imprisonment of **eighty (80) months** for Mr. Gotti's criminal conduct.

## IV.   CONCLUSION

For the reasons discussed below, the Court determines that Mr. Gotti's previous state law conviction is not a predicate offense under 18 U.S.C. § 2252A(b)(2), and therefore does not require the imposition of a mandatory minimum term of imprisonment.

The Court further determines that, after considering and weighing all of the relevant factors under 18 U.S.C. § 3553(a), including but not limited to determining the appropriateness of a departure from or variance with the Sentence Guidelines, the parties' mutual understanding at the time of Mr. Gotti's plea agreement, and a deduction of four points from his Sentencing Guidelines calculations in order to avoid an unwarranted sentencing disparity, a Non-Guidelines sentence with an upward variance to a term of imprisonment of **eighty (80) months** for Mr. Gotti's criminal conduct is necessary in order to avoid to any unwarranted sentencing disparity.

**SO ORDERED at Bridgeport, Connecticut, this 18th day of September, 2020.**

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge
