UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*,<br><br>    v.<br><br>LUQMAN GOTTI,<br>    *Defendant*. | No. 3:18-cr-335 (VAB) |

**RULING AND ORDER MOTION FOR COMPASSIONATE RELEASE**

Luqman Gotti ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* Mot. for Compassionate Release, ECF No. 94 (Mar. 7, 2022) ("*Pro Se* Mot."); Mot. to Reduce Sentence – First Step Act, ECF No. 99 (July 15, 2022) ("Suppl. Mot.").

The United States (the "Government") opposes his motion. *See* Gov't Mem. in Opp'n to Def.'s Mot. for Compassionate Release, ECF No. 100 (Aug. 22, 2022) ("Opp'n").

For the reasons set forth below, Mr. Gotti's motion for compassionate release is **DENIED**.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The Court assumes familiarity with the factual and procedural background and will only reiterate what is necessary to address this compassionate release motion. *See* Mem. of Decision re: the Sentence at 1–4, ECF No. 86 (Sept. 18, 2020) ("Sentencing Mem.").

On May 20, 2020, Mr. Gotti filed a motion to modify conditions of release in which he argued for release pending sentencing due to his underlying medical conditions and risk of contracting a severe case of COVID-19. Mot. to Modify Conditions of Release, ECF No. 69 ("Mot. to Modify").

1

On May 22, 2020, the Court denied Mr. Gotti's motion to modify conditions of release without prejudice to renewal because, without considering any other factors, Mr. Gotti had no where to go upon release. *See* Order, ECF No. 73.

On September 18, 2020, the Court issued a 32-page Sentencing Memorandum instituting a sentence of 80-months incarceration followed by a 10-year term of supervised release and explaining its reasons. *See* Sentencing Mem.

On March 7, 2022, Mr. Gotti moved *pro se* for compassionate release. *See Pro Se* Mot. at 2–3.

On March 23, 2022, the Court appointed Mr. Gotti counsel to assist with his motion for compassionate release. *See* Order, ECF No. 95.

On July 15, 2022, Mr. Gotti, with the assistance of counsel, filed a motion to reduce his sentence under the First Step Act. *See* Suppl. Mot. at 1.

On August 22, 2022, the Government filed its opposition to Mr. Gotti's *pro se* motion and supplemental motion. *See* Opp'n.

On August 26, 2022, Mr. Gotti filed a reply in support of his motions. *See* Def.'s Resp. to Gov't Opp'n to Def's Release, ECF No. 104 ("Reply").

On September 19, 2022, Mr. Gotti filed a supplemental reply that included supplemental information relevant to his motions. *See* Def.'s Suppl. Resp. to Gov't Opp'n to Def.'s Release, ECF No. 105 ("Suppl. Reply").

On Oct. 21, 2022, Mr. Gotti filed a second supplemental reply that included additional information to supplement his motions. *See* Def.'s Second Suppl. Resp. to Gov't Opp'n to Def.'s Release, ECF No. 106 ("Second Suppl. Reply").

## II. STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons [('BOP')];" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a). A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" a modification, or that

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.

*Id.* A court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

## III. DISCUSSION

18 U.S.C. § 3582(c)(1)(A) provides, in relevant part, that:

3

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . .

Section 3582(c)(1)(A) authorizes courts "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

The Commentary to U.S.S.G. § 1B1.13 identifies "four categories of criteria for compassionate release: 'Medical Conditions of the Defendant,' 'Age of the Defendant,' 'Family Circumstances,' and 'Other Reasons.'" *United States v. Rivernider*, 3:10-CR-222 (RNC), 2020 WL 597393, at *2 (D. Conn. Feb. 7, 2020) (quoting U.S.S.G. § 1B1.13, Commentary (1)(A)–(D)). With regard to the "other reasons" category, "'extraordinary and compelling reasons exist' when, [a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the defendant's medical conditions, age, or family circumstances. *Id.* at *3 (quoting U.S.S.G. § 1B1.13, Commentary (1)(D)).

In any event, "[t]he defendant has the burden to show he is entitled to a sentence reduction," *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)), and "[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction," *see United States v. Tagliaferri*, No. 13 CR.

4

115 (RA), 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019) (quoting *United States v. Jefferson*, 662 F. App'x 36, 38 (2d Cir. 2016)).

Mr. Gotti moves this Court to reduce his imprisonment to time served and his supervised release from 10 years to 5 years. Suppl. Mot. at 1; *Pro Se* Mot. at 3. Mr. Gotti contends that his health conditions put him at heightened risk of contracting COVID-19 and to date, he has not received the mental health treatments discussed at length during his sentencing. Suppl. Mot. at 3–4; *Pro Se* Mot. at 1–3.

The Court addresses each of the relevant factors to Mr. Gotti's motion below.

1. **Exhaustion**

Mr. Gotti claims that he has exhausted his administrative remedies from the BOP. *See* Suppl. Mot. at 3. The Government does not contest that exhaustion has been satisfied. *See* Opp'n at 10.

The Court will therefore proceed to address the merits of Mr. Gotti's motion.

2. **Extraordinary and Compelling Reasons**

Mr. Gotti first argues for release because his imprisonment sentence was based on "Mr. Gotti receiving significant and long overdue mental health treatment" that he has been unable to receive in BOP to date. Suppl. Mot. at 3–4. Mr. Gotti emphasizes the Court's reasoning during sentencing, particularly noting that the Court stated, "given his extensive childhood abuse, persistent substance abuse as well as related addiction issues . . . and limited therapeutic opportunities, a downward departure or variance . . . would only be appropriate to the extent Mr. Gotti could not receive the necessary mental health treatment in a facility under the control of Bureau of Prisons." *Id.* at 4 (citing Sentencing Mem. at 29). Mr. Gotti states that, despite having

served a significant portion of his sentence, BOP has not provided him with any of the mental health treatment contemplated by this Court's sentencing decision. *Id.*

Mr. Gotti also argues that his medical conditions create a heightened risk of becoming seriously ill, should he contract COVID-19. *Id.* at 4–5. Mr. Gotti is medically obese with a BMI of approximately 34.4, has asthma, and has an epilepsy seizure disorder. *Id.* at 4. Additionally, Mr. Gotti has been experiencing undiagnosed stomach issues and is awaiting a consultation and testing to determine if he has cancer. *Pro Se* Mot. at 1–2. Mr. Gotti also states that the medical conditions identified in his previously filed motion to modify conditions of release, including asthma, obesity, vitamin D deficiency, pulmonary embolism, history of lupus, a peptic ulcer, thyroid disorder, seizures, and deep vein thrombosis, have gotten worse. *Id.*; Mot. to Modify at 2–3. Mr. Gotti argues that, even though he has received a COVID shot (but not the subsequent booster shots), the heightened risk of serious illness remains. Suppl. Mot. at 4–5.

In response to Mr. Gotti's first argument, the Government argues Mr. Gotti has not received residential or non-residential sex offender treatment because he did not initially qualify due to various disciplinary violations and, once he re-applied, there was not enough time remaining in his sentence to complete the program. Opp'n at 11. The Government also notes that Mr. Gotti was offered an opportunity to participate in the Sexual Self-Regulation program but declined to participate. *Id.* Additionally, the Government states that Mr. Gotti enrolled in other forms of programming, including anger management programs. *Id.*

In response to Mr. Gotti's second argument, the Government argues that his medical conditions, either separately or in the aggregate, do not constitute an extraordinary and compelling reason to release him. *Id.* at 12.

The Government argues that, while it is aware that people with "moderate to severe" asthma and obesity are at an increased risk of serious illness, Mr. Gotti's conditions do not fall into this category. *Id.* Specifically, the Government notes that the CDC states that people with uncontrolled asthma are at heightened risk, but Mr. Gotti has been prescribed an inhaler and his most recent reported asthma attack was before November 2021. *Id.* at 12, 14. Additionally, the Government argues that, while Mr. Gotti's BMI places him in the obese category, 73.6% of American adults are overweight or obese and therefore, given its prevalence, obesity cannot be an extraordinary or compelling reason for release. *Id.* at 13.

Further, the Government argues that these conditions, in combination, are not extraordinary and compelling because Mr. Gotti has received a vaccination, which decreases his risk of contracting a severe case of COVID-19. *Id.* at 14–15.

Additionally, the Government emphasizes that Mr. Gotti's risk of exposure at USP Thomson is very low because there are currently no COVID cases in the inmate population and three cases in the staff population. *Id.* at 15. The Government argues that courts regularly deny motions for compassionate release for individuals with similar conditions, particularly after the widespread availability of vaccines and in cases where the infection rate at the specific facility is low. *Id.* at 15–16. The Government argues that there are instances in which courts have found individuals with similar conditions as Mr. Gotti eligible for compassionate release, but these cases "pre-date the widespread availability of vaccines" or involve individuals with "more severe or overlapping comorbidities." *Id.* at 16.

In reply, Mr. Gotti emphasizes his inability to access to the Sexual Offender Treatment Program. Reply at 2. Additionally, Mr. Gotti provided additional information that shows he completed the Sexual Self-Regulation Program and that he was denied access to the Sexual

7

Offender Treatment Program because it is not available at USP Thomson and he does not have enough time left in his sentence to be transferred to another facility and start and complete the program. Suppl. Reply at 13; Ex. A to Second Suppl. Reply, ECF No. 106-1.

Overall, the Court agrees with the Government.

As it relates to Mr. Gotti's first argument, *United States v. Hatcher*, 18 CR. 454-10 (KPF), 2021 WL 1535310 (S.D.N.Y. Apr. 19, 2021) is instructive. There, the defendant was granted compassionate release due to the COVID-19 pandemic. The court gave considerable weight to the "critical mental health and rehabilitative services" that the defendant needed and that the court had "envisioned her receiving while incarcerated." *Id.* at *4. The court, however, emphasized that the defendant was not able to access these services, not due to any acts by the defendant, but due to "extreme lockdown conditions." *Id.*; *see also United States v. Dones*, No. 3:18-cr-246 (JBA), 2021 WL 6063238, at *4 (D. Conn. Dec. 22, 2021) (finding it significant that "Mr. Drones has been confined in quarantine" and therefore, "he reports receiving no drug rehabilitation counseling, no vocational training, no English language instruction—no programming or training whatsoever—since the pandemic began").

Notably, here, Mr. Gotti was unable to participate in the Sexual Offender Treatment Program and Residential Drug Abuse Program due to his disciplinary infractions rather than circumstances created by COVID-19 or otherwise outside of his control.

Additionally, unlike the defendants in *Hatcher* and *Dones*, Mr. Gotti has treatment resources available. Mr. Gotti has completed the Anger Management Program and the Sexual Self-Regulation Program which "was initially developed for use in the . . . Sex Offender Treatment Programs." Suppl. Reply at 13; Opp'n at 11; Ex. D to Opp'n at 41, ECF No. 100-4. Mr. Gotti may also decide to enroll in the Basic Cognitive Skills course, which "is consistent

with the cognitive skills modules utilized in . . . the Sex Offender Treatment Program," is available at all BOP institutions, and only requires 24 hours of programming participation. Ex. D to Opp'n at 7, ECF No. 100-4. While the programming Mr. Gotti has available is not a replacement for the more intensive 500-hour Sex Offender Treatment Program or 500-hour Residential Drug Abuse Program, these alternatives show that Mr. Gotti has some resources available to continue his mental health treatment.

To be clear, as the Court stated in its sentencing memorandum, Mr. Gotti's access to mental health care is important, particularly in light of the childhood abuse he experienced and his challenges with substance abuse. At this time, however, the unavailability of the Sexual Offender Treatment Program and the Residential Drug Abuse Program does not warrant relief under 18 U.S.C. § 3582(c)(1)(A).

As it relates to Mr. Gotti's second argument, courts and the medical profession have been conscious of the risks that prisoners face, particularly those with underlying health conditions. *See United States v. Morales*, No. 3:94-CR-112 (SRU), 2020 WL 4926609, at *1 (D. Conn. Aug. 20, 2021) ("Since the outbreak of the COVID-19 pandemic, courts within this circuit and across the country have concluded that 'extraordinary and compelling circumstances' exist when an incarcerated defendant suffers from health conditions that make him particularly susceptible to serious complications should he contract COVID-19.").

It has now been over two and a half years since the start of the pandemic and vaccinations are widely available, a factor that mitigates the risk of severe illness. *See United States v. Poupart*, 3:11-CR-116 (JBA), 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021) ("Evidence that a defendant has been offered the vaccine, whether he accepts it or not, demonstrates that he had the ability and opportunity to take measures to markedly reduce his risk

of severe illness or death from COVID-19 while incarcerated."); *United States v. Gonzalez*, No. 3:97-CR-204 (JCH), 2021 WL 1990041, at *3 (D. Conn. Apr. 23, 2021) ("The court thus concludes that [Mr.] Gonzalez's vaccination mitigates his risk of severe illness from COVID-19, to the point that his health conditions do not constitute, or even contribute to a finding of, extraordinary and compelling circumstances warranting his release.").

Mr. Gotti suffers from asthma, obesity, vitamin D deficiency, pulmonary embolism, history of lupus, a peptic ulcer, thyroid disorder, seizure disorder, and deep vein thrombosis. Suppl. Mot. at 4; Mot. to Modify at 2–3. Additionally, Mr. Gotti states that he has an undiagnosed stomach issue and is awaiting a colonoscopy, endoscopy, and biopsy and/or ultrasound tests. *Pro Se* Mot. at 1–2. He believes this could be cancer due to his family medical history but has not yet received a specific diagnosis. *Id.*

As the Government acknowledges, "the combination of Mr. Gotti's preexisting medical conditions may make him more susceptible to a severe COVID-19 infection" as compared to a healthy adult. Opp'n at 12. Where these conditions are mild or controlled, however, they do not constitute an "extraordinary and compelling" reason justifying release. *See United States v. Laguerra*, No. 18-CR-0678 (JS) (AYS), 2022 WL 173111, at *3 (E.D.N.Y. Jan. 19, 2022) (finding the defendant's "mild asthma and obesity, which [were] well-managed and under control, coupled with his relatively young age" were not grounds justifying compassionate release).

Mr. Gotti's medical conditions appear to be under control. Mr. Gotti is taking medication and uses an inhaler to address his asthma. *See* Ex. C to Opp'n at 8–9. His most recently reported asthma attack was in July or August of 2021. *Id.* at 5. Mr. Gotti is also taking medications to address several of his other underlying conditions. *Id.* at 8. Finally, while Mr. Gotti reports he is

10

experiencing stomach issues, his symptoms remain undiagnosed, and he appears to be receiving the appropriate tests to diagnose and treat the stomach issues. *Pro Se* Mot. at 1–2. Therefore, due to his relatively young age of 41, and the ongoing treatment and control of his underlying conditions, these conditions are not grounds to justify compassionate release. *See Laguerra*, 2022 WL 173111, at *3.

Additionally, most cases in which defendants were released because they suffered from obesity, asthma, and other co-morbidities were decided prior to the widespread availability of the COVID-19 vaccine. *See United States v. Hough*, No. No. 19 Crim. 873 (LGS), 2022 WL 16555310, at *2 (S.D.N.Y. Oct. 31, 2022) (collecting cases related to obesity, asthma, and diabetes). But, while relevant, Mr. Gotti's vaccination status alone does not preclude him from relief. *See Hatcher*, 2021 WL 1535310, at *4 (granting compassionate release to vaccinated defendant); *United States v. Ahmad*, No. 05-cr-00019-DC, 2021 WL 3550229, at *1 (S.D.N.Y. 2021) (denying motion for compassionate relief but stating "[i]n light of the uncertainties regarding the Delta variant and break-through COVID, [defendant's] vaccination status certainly does not preclude him from relief").

Here, however, Mr. Gotti's vaccination status clearly lessens his risk of contracting COVID-19 because his underlying conditions appear to be under control and, as will be discussed more below, the vast majority of inmates and staff at USP Thomson are also vaccinated and positive COVID-19 rates at USP Thomson remain low. *See United States v. Guzman*, No. 19 CR. 24 (KPF), 2022 WL 138101 (S.D.N.Y. Jan. 13, 2022) ("[The defendant's] vaccinated status mitigates, though it does not reduce entirely, his risk of contracting the COVID-19 virus and having serious medical conditions, and it further counsels against a finding of 'extraordinary and compelling reasons.'"); *United States v. Rao*, No. 3:12-cr-97 (SRU), 2021

WL 3742127, at *6–7 (D. Conn. Aug. 23, 2021) (finding compassionate relief was not warranted where the defendant suffered from HIV because the defendant had been vaccinated and there were low rates of transmission and high rates of vaccination in the defendant's facility).

Finally, the Court recognizes that conditions in prisons can rapidly change. *See United States v. Haessly*, No. 3:16-cr-32 (VAB), 2020 WL 5269793 (D. Conn. Sept. 4, 2020) (recognizing that extraordinary and compelling circumstances may exist in a facility without active COVID-19 cases), however, in this case, USP Thomson has maintained low levels of COVID-19 cases. The Government notes that, at the time it filed its brief, there were no COVID-19 cases in the inmate population and three cases in the staff population. Opp'n at 15. As of November 10, 2022, Thomson USP reports no positive COVID-19 cases for both staff and inmates. *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed Nov. 10, 2022). Additionally, 348 of the 510 staff members are fully vaccinated, and 925 of the 956 inmates are fully vaccinated. *Id.*; *USP Thomson*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/tom/ (last accessed Nov. 10, 2022). These statistics undermine Mr. Gotti's argument that continued incarceration puts him at risk. *See United States v. Alamo*, 588 F. Supp. 3d 300, 304 (E.D.N.Y. 2022) (noting that two positive cases at a facility similarly undermined the defendant's compassionate release argument).

On balance, while Mr. Gotti has medical conditions that may put him at risk of severe illness if he were to contract COVID-19, in light of the ongoing treatment and control of his conditions, his vaccination status, the lack of positive cases at USP Thomson, and the fact that 96.7% of inmates and 68.2% of staff at USP Thomson are vaccinated, Mr. Gotti has failed to demonstrate extraordinary and compelling circumstances warranting relief under 18 U.S.C. § 3582(c)(1)(A).

3. **Section 3553(a) Factors**

Even if Mr. Gotti had established extraordinary and compelling circumstances, the Section 3553(a) factors weigh against compassionate release.

The Government argues that Mr. Gotti's offense was a very serious one and Mr. Gotti has a criminal history that includes acts of violence. Opp'n at 19. The Government also notes that while in custody, Mr. Gotti has disobeyed the rules and engaged in violent behavior, including assaulting two other inmates. *Id.* Additionally, the Government argues that releasing Mr. Gotti would create an unwarranted sentencing disparity with Mr. Gregan, who was a first-time offender charged with similar conduct who received a 60-month sentence and was recently denied compassionate release. *Id.* at 19–20.

In response, Mr. Gotti emphasizes his childhood of abuse. Reply at 1. Additionally, Mr. Gotti argues that comparing Mr. Gotti to Mr. Gregan's sentence is inappropriate because "the Court would need to know . . . how much time Mr. Gregan actually served of his 60[-]month sentence." Reply at 2

Overall, the Court disagrees.

In the Sentencing Memorandum issued sentencing Mr. Gotti, the Court considered at length each of the 3553(a) factors, as well as any reason for variances and departures, including Mr. Gotti's extensive childhood abuse, persistent substance abuse, addiction-related issues, and limited therapeutic opportunities. *See* Sentencing Mem. Nothing significant has changed since the Court issued the Sentencing Memorandum just over two years ago.

Accordingly, the Court will deny Mr. Gotti's motion for compassionate release.

## IV.  CONCLUSION

For the reasons explained above, the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of November, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE